**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

ERIKA RENNA STODDARD,      )
            )
       **Plaintiff,**     )
            )
**vs.**            )     **Case No. 13-cv-289-TLW**
            )
**CAROLYN W. COLVIN,**     )
**Acting Commissioner of Social Security,**  )
            )
       **Defendant.**    )

## OPINION AND ORDER

Plaintiff Erika Renna Stoddard seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 28). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. <u>See</u> <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. <u>See</u> <u>White v. Barnhart</u>, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 33-year old female, applied for applied for Title II and Title XVI benefits on October 22, 2009. (R. 110-11, 112-14). Plaintiff originally alleged a disability onset date of April 19, 2007, but amended that date to October 1, 2009 at the ALJ hearing based on the fact that plaintiff was employed through the end of September 2009. (R. 30-33). Plaintiff initially claimed that she was unable to work due to a hearing impairment and kidney problems but later alleged additional impairments of MRSA, incontinence, depression, anxiety, paranoia, confusion, and physical fatigue. (R. 151, 190). Plaintiff's claim for benefits was denied initially on April 6, 2010, and on reconsideration on August 30, 2010. (R. 53-57, 59-63, 64-67, 69-71, 72-74). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on August 30, 2011. (R. 28-52). The ALJ issued a decision on October 7, 2011, denying benefits and finding plaintiff not disabled because she was able to perform some of her past relevant work and other work. (R. 12-25). The Appeals Council denied review, and plaintiff appealed. (R. 1-4).

On appeal, plaintiff raises multiple points of error. Of the issues raised, plaintiff's argument about noise exposure at step five requires remand.

**The ALJ's Decision**

The ALJ found that plaintiff had severe impairments of "Severe Bilateral Sensorineural hearing loss and Depression."[1] (R. 17). After reviewing plaintiff's hearing testimony and the administrative record, the ALJ determined that plaintiff could perform medium work but "must avoid jobs that require good bilateral hearing and jobs with background noises which could present a danger for her or others." (R. 20). Plaintiff was also limited to simple tasks, superficial contact with co-workers and supervisors, and no contact with the general public. Id. Relying on the vocational expert's testimony, the ALJ concluded that plaintiff could perform her past relevant work as a "parts cleaner" (no DOT # listed) and other work, including laundry worker (DOT # 361.685.018), production worker (DOT # 529.686-070), assembler (DOT # 706.684-022), attacher (DOT # 795.687-014), sorter (DOT # 521.687-086), and trimmer (DOT # 692.685-266). (R. 23-24).

## ANALYSIS

In this case, the objective medical evidence of plaintiff's hearing impairment was clear and, in large part, uncontested. Plaintiff presented no medical evidence of her own, so the ALJ relied heavily on a report from a consultative examining audiologist. The audiologist found that plaintiff had "symmetric severe sensorineural hearing loss across all frequencies in both the right and left ear." (R. 234). The audiologist further found that "[h]er speech reception thresholds were consistent with her pure tone averages and were 80 dB in the right ear and 85 dB in the left ear. Her speech discrimination scores at the 97 dB presentation level in the right ear was 77%, and left ear 59%." Id. He diagnosed plaintiff with severe bilateral sensorineural hearing loss" and recommended hearing aids for each ear. Id.

---

[1] The ALJ later commented on the lack of medical evidence, stating that he "nonetheless gave the claimant the benefit of the doubt and found the claimant's impairments to be severe in nature." (R. 22).

A physical residual functional capacity form from one of the nonexamining agency physicians found that plaintiff could perform medium work with no postural restrictions. (R. 269-74). Based on the medical evidence, the agency physician found that plaintiff's hearing was "limited" and that plaintiff "should avoid jobs that require good bilateral hearing" and should "avoid even moderate exposure" to noise and "avoid all exposure" to vibration. (R. 273).

These are the only medical records that address plaintiff's hearing loss, aside from a mention in the consultative examining psychologist's report, where plaintiff reported that she was born with hearing impairments. (R. 247). Plaintiff also reported that she read lips and that hearing aids did not improve her hearing due to the type of loss she had. Id. Plaintiff's testimony at the hearing was consistent with this report. (R. 38, 43-44).

The ALJ gave great weight to the opinions of the consultative examiners and "to the State medical and psychological experts where their opinions were consistent with those of the consultative examiners and the medical evidence as a whole." (R. 22).

The ALJ found that plaintiff "must avoid jobs that require good bilateral hearing and jobs with background noises which could present a danger for her or others." (R. 20). The ALJ also gave great weight to the physical residual functional capacity assessment completed by an agency physician, who found that plaintiff should avoid "even moderate exposure to noise." (R. 22, 273). Plaintiff contends that the ALJ erred at step five because the ALJ's hypothetical "ignores what degree of noise would harm" plaintiff. (Dkt. 18). Plaintiff also argues that the other work cited in the opinion conflicts with the ALJ's residual functional capacity findings because they require plaintiff to be exposed to moderate or loud noise. (Dkt. 18 at 3). The Commissioner argues that the ALJ's limitation is sufficient and that plaintiff confuses moderate *exposure* to noise with the *intensity* of noise appropriate to accommodate plaintiff's hearing

limitations. (Dkt. 19 at 4-5). At the hearing, the Commissioner argued that she "would assume" that the limitation, as stated by the ALJ, was intended to prevent plaintiff from exposure to "loud" or "very loud" noise, as those terms are defined in the *Dictionary of Occupational Titles* ("DOT"). (Dkt. 26, Hearing, Marisa Tanya Silverman).

The DOT addresses noise intensity levels, but not frequency of exposure, in its discussion of environmental conditions. <u>See</u> *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, United States Department of Labor, 1993, Appendix D. The DOT rates the noise intensity of a work environment on a scale of 1 to 5. <u>See id.</u> All the jobs that the ALJ cited as other work that plaintiff could perform rate as a 3 on that scale. A 3 is defined as "Moderate" noise equivalent to a "business office where typewriters are used; department store; grocery store; light traffic; fast food restaurant at off-hours." <u>Id.</u>

In contrast to the other work findings, the ALJ gave great weight to the agency physician's findings that plaintiff "should avoid even moderate exposure" to noise. (R. 22, 273). Because the ALJ gave great weight to that opinion, the ALJ should have adopted the agency physician's findings and stated the noise limitation as "avoid even moderate exposure to noise," rather than "avoid noise levels which present a danger to her or others." When an ALJ gives great weight to an opinion, he must adopt all the limitations in that opinion or explain his reasons for doing so. <u>See</u> <u>Frantz v. Astrue</u>, 509 F.3d 1299, 1302-03 (10th Cir. 2007) (remanding, in part, because the ALJ accepted some, but not all, limitations from a nonexamining physician without explanation). The Tenth Circuit requires an ALJ to "discuss the uncontroverted evidence not relied upon and significantly probative evidence that is rejected." <u>Id.</u> (citing <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-10 (10th Cir. 1996) and referencing <u>Haga v. Astrue</u>, 482 F.3d 1205 (10th Cir. 2007)). Otherwise, the ALJ's decision is not supported by substantial evidence.

Here, the ALJ did not explain his reasons for the noise limitation as it is stated in the decision. If the ALJ intended to impose a limitation different from "avoid even moderate exposure to noise," then the ALJ should have explained why he selected a different limitation. If the ALJ was adopting the noise limitation as stated, then he should have clearly communicated that limitation, both to the vocational expert at the hearing and in his decision. As the limitation is currently written, the Court cannot determine whether the ALJ's limitation is supported by substantial evidence. The Commissioner argues that <u>Stokes v. Astrue</u>, 274 Fed.Appx. 675, 683 (10th Cir. 2008) (unpublished), applies even if the ALJ intended to include exposure to moderate noise levels in his findings. In <u>Stokes</u>, the Tenth Circuit interpreted a low noise restriction in the ALJ's findings to allow plaintiff to work in a "moderate" setting as defined in the DOT. If the ALJ had clearly defined his limitation to include only exposure to moderate noise and explained his reason for not adopting the agency physician's limitation, the Court would agree. However, the ALJ's limitation is not clear.

Had the ALJ explained his reasoning, that explanation would have assisted the Court in reviewing the ALJ's decision. For example, the medical evidence does not indicate whether exposure to noise would increase plaintiff's hearing loss, but based on the medical evidence, it appears that the noise levels themselves would not harm plaintiff or serve as a distraction. The more likely scenario is that certain levels of background noise might interfere with plaintiff's ability to hear and understand verbal instructions, thereby impacting worker safety. However, the ALJ never articulated, either in his opinion or during the hearing, what noise levels would constitute a danger or why. Therefore, the Court cannot follow the ALJ's reasoning to determine whether the noise limitation is supported by substantial evidence.

## CONCLUSION

The ALJ adopted a limitation on plaintiff's ability to work in a noise environment that is not compatible with the DOT's categorization of noise intensity levels or the findings of the agency physician, whose opinion was given great weight. These inconsistencies, along with the ALJ's choice of words, are confusing. As a result, the Court cannot conduct a meaningful review of the ALJ's decision at steps four and five. For these reasons, the ALJ's decision is **REVERSED AND REMANDED** for further proceedings.

SO ORDERED this 9th day of June 2014.

T. Lane Wilson
United States Magistrate Judge